1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Honorable Brian D. Lynch
Chapter 11
Location of Hearing:  Tacoma, Courtroom I
Date of Hearing:  July 17, 2023
Time of Hearing:  10:00 a.m.
Response Date:  July 10, 2023

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

In re:

SHILO INN, PORTLAND/205, LLC,

    Debtor and Debtor-in-Possession,

Case No. 22-41459-BDL

**DEBTOR'S MOTION TO APPROVE SETTLEMENT WITH PDX SHILO LOAN OWNER LLC PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF LARRY CHANK IN SUPPORT THEREOF**

Shilo Inn, Portland/205 LLC (the "Debtor"), the chapter 11 debtor and debtor-in-possession in the above-captioned, chapter 11 bankruptcy case, respectfully submits "Debtor's Motion to Approve Settlement with PDX Shilo Loan Owner LLC Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Motion").

The relief requested in this Motion is based on this Motion, the memorandum of points and authorities annexed to the Motion and the annexed declaration of Larry Chank (the "Declaration"). The bases of the Motion are 11 U.S.C. §§ 105 and 363, and Rule 9019 of the Federal Rules of

MOTION TO APPROVE SETTLEMENT

- 1

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

120032847.2 0070625-00008

Bankruptcy Procedure ("FRBP" or "Bankruptcy Rules"). A proposed order is attached as **Exhibit 1** hereto.

By way of the Motion, the Debtor requests entry of an order of the Court approving the settlement (the "Settlement") as memorialized in the settlement agreement (the "Agreement" or "Settlement Agreement") attached as **Exhibit 2** to the Declaration, entered into by the Debtor and PDX Shilo Loan Owner LLC ("Lender"). In addition to the Debtor and Lender, the other parties to the Settlement and Agreement are Mark Hemstreet and Portland/205 Hotel (2) Corp. ("PH2" and with Mr. Hemstreet, collectively, the "Loan Parties").

The Settlement provides the Debtor an opportunity to refinance and pay the Lender at a discounted pay off figure and comply with other reporting requirements, or otherwise the Lender will be permitted to foreclose outside of bankruptcy court. The Settlement represents the best outcome for the estate by allowing the parties to reach a resolution of their disputes in an efficient and cost-effective manner. The proposed Settlement is in the best interest of the estate because it brings finality to the disputes between the parties and permits the Debtor to continue with its business, which benefits the other creditors, made up of largely unsecured trade vendors. The Settlement should be approved.

## **RELIEF REQUESTED**

**WHEREFORE,** the Debtor respectfully requests that this Court enter an order:

(1)     affirming the adequacy of the Notice given herein;

(2)     granting the Motion in its entirety, as set forth in Exhibit 1 hereto;

(3)     Approving the Settlement;

(4)     Authorizing the Debtor to take all steps necessary to implement the Settlement; and

(5)     granting such other and further relief as the Court deems just and proper under the circumstances.

MOTION TO APPROVE SETTLEMENT

- 2 -

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*
120032847.2 0070625-00008

1   DATED: June 26, 2023

2                     LEVENE, NEALE, BENDER,
                    YOO & GOLUBCHIK L.L.P.

3

4                     */s/ John-Patrick M. Fritz*
                    David B. Golubchik (pro hac vice admitted)

5                     John-Patrick M. Fritz (pro hac vice admitted)

6                     Attorneys for Debtor and
                    Debtor-in-Possession

7

8                     STOEL RIVES LLP

9                     */s/ Bryan T. Glover*
                    Bryan T. Glover, WSBA No. 51045

10

11                     Attorneys for Debtor and
                    Debtor-in-Possession

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

120032847.2 0070625-00008

## MEMORANDUM OF POINTS OF AUTHORITIES

### I.

### STATEMENT OF RELEVANT FACTS

1. The Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on November 9, 2022 (the "Petition Date"). Since the Petition Date, the Debtor has continued to manage its financial affairs, operate its business, and administer its bankruptcy estate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2. The Debtor's primary asset is a certain 198-all suites, 4-story, full-service hotel located on fee title land near the Portland International Airport ("PDX") in Portland, Oregon (the "Hotel"). The Hotel is collateral for a certain promissory note (the "Loan") in the amount of $12,200,000 originally made in December, 2019, by Axos Bank ("Axos") and now held by PDX Shilo Loan Owner LLC (the "Lender") and serviced by Serene Investment Management, LLC ("Serene").

3. The full-service Hotel property has an indoor pool, spa, steam and sauna room, fitness and business center, and large convention center/meeting room facilities as well as a restaurant and lounge (the "Restaurant") that is leased out to an independent third-party tenant lessee.

4. The Hotel is operated pursuant to a franchise agreement (the "Franchise Agreement") with Shilo Franchise International, LLC ("SFI") and managed and operated by Shilo Management Corporation ("SMC").

5. As of the Petition Date, Lender contends that the Debtor was indebted to Lender in the amount of not less than $17,555,298.13 (the "Prepetition Indebtedness") on account of a loan (the "Mortgage") in the principal amount of $12,200,000 made by Axos Bank (the predecessor-in-interest to Lender) ("Original Lender"). The Loan Parties dispute the amount of the Prepetition

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

Indebtedness including certain charges owing to Lender thereunder. Lender contends that the Debtor has waived its right to challenge the amount of the Prepetition Indebtedness that was owing as of the Petition Date pursuant to the *Interim Order (I) Authorizing Use of Cash Collateral and Granting Adequate Protection Liens and (II) Scheduling a Final Hearing* [Dkt. No. 45] (the "Interim Order") entered by the Bankruptcy Court on November 22, 2022. The Debtor disputes such contention.

6. The Parties' respective rights and obligations with respect to the Prepetition Indebtedness are set forth in various loan documents binding the Parties, including (a) the Secured Promissory Note, dated as of December 16, 2019, to the order of the Original Lender (the "Note"); (b) the Deed of Trust, Assignment of Leases and Rents and Security Agreement dated December 16, 2019, executed by Debtor, in favor of Ticor Title Company of Oregon, as trustee, for the benefit of Lender's predecessor, Axos Bank, as beneficiary (the "Deed of Trust"); (c) Guaranties of the Mortgage executed by Hemstreet (the "Hemstreet Guaranty") and PH2 (the "PH2 Guaranty", together with the Hemstreet Guaranty, the "Guaranties"); (d) an Assignment and Subordination of Management Agreement and Franchise Agreement (the "Subordination Agreement"); (e) an Estoppel Certificate; (f) an Assignment of Leases and Rents, Security Agreement and Fixture Filing; (g) an Assignment of Line of Credit Instrument Deed of Trust; (h) and Assignment of Loan Documents, and (i) other loan documents related to and evidencing the Mortgage (collectively, the "Loan Documents").

7. On March 19, 2023, Lender filed its Proof of Claim, which was designated as Claim No. 8 (the "Lender POC"). Pursuant to the Lender POC, Lender asserts a secured claim, as of the Petition Date, in the amount of $17,555,298.13. The Lender further contends that it is over-secured and entitled to additional interest, fees and costs from and after the Petition Date.

8. During the pendency of the Debtor's bankruptcy case, the Debtor and Lender entered into numerous agreements and stipulations for use of cash collateral, with certain reporting

MOTION TO APPROVE SETTLEMENT

- 5

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

120032847.2 0070625-00008

Case 22-41459-BDL    Doc 126    Filed 06/26/23    Ent. 06/26/23 16:22:40    Pg. 5 of 35

1  requirements related thereto, the last of which was filed on January 24, 2023 [Dkt. # 97] (the

2  "Stipulation").

3      9.      The Debtor and Lender continued to engage in good faith settlement discussions in

4  order to resolve the Parties' disputes and this bankruptcy case.

5      10.     The Debtor and Lender have agreed to enter into a settlement (the "Settlement") as

6  memorialized in the settlement agreement (the "Agreement" or "Settlement Agreement")[1]

7  attached as **Exhibit 2** to the Declaration.

8      11.     Based on such extensive efforts, the Parties have reached the Agreement to bring

9  finality to the Parties' lending relationship and assure that the Debotr and any transferee of the

10  Debtor does not file for bankruptcy relief for at least one (1) year after the effective date (as defined

11  in the Agreement), that the Loan Parties and their affiliates do not challenge or interfere with

12  Lender's foreclosure efforts following the deadlines set forth in Paragraph 6 of the Agreement,

13  that the Loan Parties and their affiliates do not challenge Lender's entitlement to default interest

14  or the amount of Debt stipulated to be owing as of the date of the Agreement and that Lender is

15  granted *in rem stay* relief with respect to the Property in any subsequent bankruptcy filing for a

16  period of two (2) years after the Effective Date.

17      12.     The most salient terms of the Settlement and Agreement are summarized below,

18  but, in the event of a discrepancy between these summarized terms and the actual terms in the

19  Agreement, the terms in the Agreement control.

20      13.     As of the close of business on June 5, 2023, the Debtor agrees for purposes of

21  Settlement that (i) the total Mortgage balance is **$18,832,511.95** (the "Debt"); (ii) the principal

22  amount of the Mortgage outstanding is $12,200,000, (ii) plus accrued interest at the Default Rate

23  (as defined in the Note) totaling $5,991,725.00 (iii) plus late charges totaling $131,198.46; (iv)

24  plus a Prepayment Premium (as set forth in Section 7.1 of the Note) totaling $244,000; (v) plus a

25

26  _____
[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.

**Stoel Rives LLP**
Attorneys
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

1  special servicing fee totaling $41,000; (vi) plus the fees of counsel, financial advisor and appraiser

2  totaling $555,786.95.

3  14.  Each of the Loan Parties, on behalf of himself or itself and on behalf of its or his

4  affiliates, covenants and agrees not to assert a defense to, seek a restraint of, or interfere with

5  Lender's enforcement of its rights and remedies in the Agreement or under any of the Loan

6  Documents, in the Foreclosure, any other foreclosure or otherwise, *which Foreclosure shall be*

7  *re-noticed for September 1, 2023*, after occurrence of the Effective Date.

8  15.  Debtor covenants and agrees that, in any subsequent bankruptcy proceeding of the

9  Debtor or with respect to the Property, Lender shall thereupon be entitled and the Debtor

10  irrevocably consents to immediate and unconditional relief from any automatic stay imposed by

11  section 362(a) of the Bankruptcy Code, or otherwise, on or against the exercise of the rights and

12  remedies otherwise available to Lender as against the Property and the other Collateral, and the

13  Loan Parties irrevocably waive any right to object to such relief and will not contest any motion

14  by Lender or any successor seeking such relief.

15  16.  Notwithstanding the stipulated and agreed amount of the Debt set forth above,

16  Lender agrees to accept a discounted payoff of the Debt in the amount of ▇▇▇▇▇▇ (the "DPO"),

17  on the condition that the DPO is paid to Lender upon the following schedule:

18  a.  Unless extended as set forth below, the Debtor shall make full payment of the DPO

19  in immediately available funds on or before August 28, 2023 (the "Initial

20  Deadline");

21  b.  The Debtor shall have the right to extend the Initial Deadline through and including

22  September 29, 2023 ("Second Deadline"), on the condition that (i) the Debtor pays

23  Lender in immediately available funds, on or before August 28, 2023, an extension

24  fee of $75,000, which payment shall not be applied as a credit against, or reduction

25  from, the DPO and (ii) the Debtor pays its real property taxes and provides evidence

26

MOTION TO APPROVE SETTLEMENT

- 7 -

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

120032847.2 0070625-00008

of the same to the Lender on or before August 28, 2023, in accordance with Paragraph 11 of the Agreement;

    c.   In the event that the Debtor does not pay the DPO in full on or before the Second Deadline, and solely if the Second Deadline was timely and properly exercised, the Debtor shall have the right to one final extension of the Second Deadline, through and including October 31, 2023 (the "<u>Final Deadline</u>"), on the condition that the Debtor pays Lender in immediately available funds, on or before September 28, 2023, an extension fee of $100,000, which payment shall not be applied as a credit against, or reduction from, the DPO.

17.    If the Initial Deadline, or Second Deadline, or Final Deadline is not met with payment as required under the Agreement, then Lender may foreclose without interference from the Loan Parties.

18.    The Debtor shall make all outstanding property tax payments on the Property as set forth herein. In connection therewith, the Debtor shall pay $198,607.78 to bring current all outstanding property taxes and provide to Lender evidence of such payment having been made with next day funds (i.e., wire, online, cashier's check) on or before August 28, 2023.

19.    Until such time as the DPO is paid in full or Lender forecloses on the Property, the Debtor shall provide a Daily Report every Monday and the monthly STR report within five days of receipt.

20.    Each of the Loan Parties covenants and agrees (a) not file a voluntary petition for bankruptcy relief under the Bankruptcy Code for at least one (1) year after the effective date of the Settlement and, (b) by any act or omission indicate its consent to, approval of or acquiescence in any petition, application or proceeding or order for relief under the Bankruptcy Code for at least one (1) year after the effective date of the Settlement.

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

120032847.2 0070625-00008

21.     Lender agrees to accept the DPO strictly in accordance with the terms of Paragraph 6 of the Agreement in full and complete satisfaction of all amounts owing under Loan Documents, including, without limitation, the Guaranties.

22.     In the event that Lender forecloses on the Collateral, and none of the Loan Parties has theretofore breached any of its respective covenants or obligations under this Agreement, including, without limitation, timely reporting, one (1) year bar on filing for bankruptcy, timely property tax payment as provided in Paragraph 11 above, and other payments, and lack of interference by the Loan Parties and their affiliates with Lender's foreclosure efforts, any deficiency or other amounts owing under the Loan Documents, will be waived and forgiven and Lender shall be deemed to have released any right to pursue the Loan Parties with respect to the Property and all obligations and amounts owed to Lender under the Loan Documents.

23.     The Loan Parties are agreeing to a general release of the Lender, including for unknown potential claims under Section 1542 of the California Civil Code.

24.     The Debtor is concurrently filing a motion to dismiss this case pursuant to 11 U.S.C. §1112 (the "<u>Dismissal Motion</u>").  The Settlement is contingent upon the Dismissal Motion being granted.

25.     The Debtor believes and represents that the proposed Settlement is in the best interest of the estate.

**II.**

**<u>THE SETTLEMENTS SHOULD BE APPROVED</u>**

**A.     <u>THE CREDITORS HAVE RECEIVED SUFFICIENT NOTICE OF THE SETTLEMENTS.</u>**

Rule 9019 of the Federal Rules of Bankruptcy Procedure authorizes a party in interest to settle claims following notice and an opportunity for a hearing.  Fed. R. Bankr. P. 9019.  Here, notice of this Motion, which summarizes the relief sought by the Debtor, was served upon the all

MOTION TO APPROVE SETTLEMENT

- 9 -

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

120032847.2 0070625-00008

Case 22-41459-BDL    Doc 126    Filed 06/26/23    Ent. 06/26/23 16:22:40    Pg. 9 of 35

creditors of the estate, the United States Trustee, as well as any parties who have requested special notice. Further, while not required unless there is an opposition, the Motion was set for hearing.

## B. THE BANKRUPTCY RULES ALLOW THE COURT TO APPROVE THE SETTLEMENTS.

Rule 9019(a) states that "the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The decision of whether a compromise or settlement should be accepted or rejected lies within the sound discretion of the Court. *In re Carson*, 82 B.R. 847, 852 (Bankr. S.D. Ohio 1987); *In re Hydronic Enterprise, Inc.*, 58 B.R. 363, 365 (Bankr. D.R.I. 1986); *In re Mobile Air Drilling Co., Inc.*, 53 B.R. 605, 607 (Bankr. N.D. Ohio 1985); *Knowles v. Putterbaugh (In re Hallet)*, 33 B.R. 564, 565 (Bankr. D. Me. 1983).

Sound discretion is judicial power exercised fairly and equitably. As the Supreme Court noted, the term "discretion" denotes the absence of a hard and fast rule:

> When invoked as a guide to judicial action, it means a sound discretion, that is to say, a discretion exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reasonableness and conscience of the judge to a just result.

*Langnes v. Green*, 282 U.S. 531, 541 (1931).

Correspondingly, the Ninth Circuit has recognized that "the bankruptcy court has great latitude in approving settlements." *In re Woodson*, 839 F.2d 610,620 (9th Cir. 1988).

## C. CASE LAW SUPPORTS APPROVAL OF THE SETTLEMENTS.

It is well-established that, as a matter of public policy, settlements are favored over continued litigation. *See, e.g., In re A & C Properties*, 784 F.2d 1377 (9th Cir. 1986); *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976); *In re Heissenger Resources, Ltd.,* 67 B.R. 378, 382 (C.D. Ill. 1986).

MOTION TO APPROVE SETTLEMENT

- 10

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

120032847.2 0070625-00008

Case 22-41459-BDL    Doc 126    Filed 06/26/23    Ent. 06/26/23 16:22:40    Pg. 10 of 35

The focus of inquiry in reviewing and approving compromises is whether the settlement is reasonable under the particular circumstances of the case. *See In re General Store of Beverly Hills*, 11 B.R. 539 (9th Cir. BAP 1981). It is not the bankruptcy judge's responsibility to decide the numerous questions of law and fact with respect to the merits of the litigation, but rather to "canvas the issues and see whether the settlement falls below the lowest point of the range of reasonableness." *Heissenger Resources*, 67 B.R. at 383.

Among the factors to be considered in determining whether a settlement is fair, equitable and reasonable are the following:

> (1)     the probability of success in the litigation;
>
> (2)     any impediments to collection;
>
> (3)     the complexity, expense, inconvenience and delay of litigation; and
>
> (4)     the interest of creditors with deference to their reasonable opinions.

*A & C Properties*, 784 F.2d at 1381.

From an analysis of the foregoing factors in this case, the Court should conclude that the terms of the Settlements are fair and equitable and well within the range of reasonableness.

### 1. **Probability of Success.**

The filing of this bankruptcy case was precipitated by disputes between the Debtor and Lender and Lender's impending foreclosure sale. The probability for success for either party is highly uncertain in that, in the absence of a settlement, the Debtor and Lender would be forced to litigate a contested plan confirmation with all of the evidence, discovery, and expert testimony associated with numerous provisions of Bankruptcy Code Section 1129, including issues of feasibility, impaired consenting non-insider class voting, and the appropriate interest-rate and term

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

of years for a cramdown secured note under § 1129(b)(2)(A).  All of the foregoing would be extremely expensive and uncertain, militating in favor of the Settlement instead of litigation  Based on the foregoing, Debtor believes that the Settlements are in the best interests of the estate.

### 2.  **Impediments to Collection.**

This factor does not apply here because the Debtor is not attempting to collect from Lender.

### 3.  **Complexity, Expense, Inconvenience and Delay of Litigation.**

The legal issues involved are about as complicated as can be had in a chapter 11 case, because, in the absence of the Settlement, the Debtor will be forced to proceed with contested plan confirmation against a secured creditor.  Basic issues of § 1129(a) would be complex here, particularly on issues of plan feasibility under § 1129(a)(11), which would require expert testimony on plan projections and extensive discovery into the historical financial data of the Debtor to support the projections.  Additionally, there could likely be extensive complicated litigation over whether an impaired consenting non-insider class of creditors was "gerrymandered" to obtain a vote in favor of confirmation under § 1129(a)(10).  Furthermore, for confirmation on Lender as a secured creditor pursuant to § 1129(b)(2), the Debtor would have to retain an interest rate and loan-term expert, cross-examine Lender's expert on the same issues, and potentially address two types of plan scenarios in a disclosure statement based on the two possibilities of whether Lender would make the § 1111(b) election for its claim (if the claim were to be valued as partially unsecured).  The foregoing are the most complicated, most complex, and most expensive of chapter 11 plan litigation.  Therefore, this factor militates in favor of approving the Settlement.

### 4.  **The interest of creditors with deference to their reasonable opinions.**

So far, Lender is the only creditor active in this Case.  The Debtor is not aware of any creditors that would oppose or be harmed by the Settlement.  Rather, the Settlement brings finality to a long-running dispute and permits the Debtor to proceed with its business affairs and keep doing business with its trade vendors, who would otherwise by harmed by the time, expense, and

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

delay of a long and financially painful plan proposal and plan confirmation battle. Accordingly, this factor militates in favor of approving the Settlement.

### III.

### CONCLUSION

**WHEREFORE,** the Debtor respectfully requests that this Court enter an order:

(1)    affirming the adequacy of the Notice given herein;

(2)    granting the Motion in its entirety;

(3)    Approving the Settlement;

(4)    Authorizing the Debtor to take all steps necessary to implement the Settlement; and

(5)    granting such other and further relief as the Court deems just and proper under the circumstances.


DATED:  June 26, 2023

LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.


*/s/ John-Patrick M. Fritz*
David B. Golubchik (pro hac vice admitted)
John-Patrick M. Fritz (pro hac vice admitted)

Attorneys for Debtor and
Debtor-in-Possession

STOEL RIVES LLP


*/s/ Bryan T. Glover*
Bryan T. Glover, WSBA No. 51045

Attorneys for Debtor and
Debtor-in-Possession

MOTION TO APPROVE SETTLEMENT

- 13

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

120032847.2 0070625-00008

## DECLARATION OF LARRY CHANK

I, Larry Chank, hereby declare as follows:

1.　　I am over 18 years of age.  I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.　　I am currently employed as the CEO of Shilo Management Corporation ("SMC"), which is the manager and operator of the Hotel (as defined below) owned by Shilo Inn, Portland/205, LLC (the "Debtor") the debtor and debtor in possession in the above-captioned, chapter 11 bankruptcy case.

3.　　 I have reviewed and am familiar with and am knowledgeable about the books and records of SMC and the Debtor, which books and records are made in the regular practice of business, kept in the regular course of business, made by a person with knowledge of the events and information related thereto, and made at or near the time of events and information recorded.

4.　　I was hired as CEO of SMC in February 2019, in which role I have continued to serve to this present day.  I am the authorized agent for the Debtor in its chapter 11 bankruptcy case.

5.　　I began my hospitality career in 1988 and have hands-on experience in hotel & restaurant operations (15 years) and accounting/finance (49 years).  I am a 1970 graduate of Niagara University, Niagara Falls, New York, with a BBA in accounting and service as a Lieutenant in the Army Artillery.  Prior to Shilo Inns, my position was the CFO/Controller for the Hopi Tribe Economic Development Corporation, and,  in addition to my accounting duties, this position allowed me to advise the Hopi Tribe on matters related to operation of their residential, commercial, hotel, restaurant, travel plaza, and other real estate developments.  I have a Certified Public Accountant license issued in the State of New York, and I am a licensed real estate broker in the State of California.

MOTION TO APPROVE SETTLEMENT

- 14

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

120032847.2 0070625-00008

Case 22-41459-BDL    Doc 126    Filed 06/26/23    Ent. 06/26/23 16:22:40    Pg. 14 of 35

6.       My duties have included the management and oversight of accounting personnel, including Accounts Payable, Accounts Receivable, Payroll, General Ledger, Audit, Treasury, Budgets, Cash Flow, Financial Reporting, Human Resources, and Information Systems.

7.       I make this declaration in support of the "Debtor's Motion to Approve Settlement with PDX Shilo Loan Owner LLC Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Motion</u>").

8.       The Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code on November 9, 2022 (the "<u>Petition Date</u>"). Since the Petition Date, the Debtor has continued to manage its financial affairs, operate its business, and administer its bankruptcy estate as a debtor-in-possession.

9.       The Debtor's primary asset is a certain 198-all suites, 4-story, full-service hotel located on fee title land near the Portland International Airport ("<u>PDX</u>") in Portland, Oregon (the "<u>Hotel</u>"). The Hotel is collateral for a certain promissory note (the "<u>Loan</u>") in the amount of $12,200,000 originally made in December, 2019, by Axos Bank ("<u>Axos</u>") and now held by PDX Shilo Loan Owner LLC (the "<u>Lender</u>") and serviced by Serene Investment Management, LLC ("<u>Serene</u>").

10.      The full-service Hotel property has an indoor pool, spa, steam and sauna room, fitness and business center, and large convention center/meeting room facilities as well as a restaurant and lounge (the "<u>Restaurant</u>") that is leased out to an independent third-party tenant lessee.

11.      The Hotel is operated pursuant to a franchise agreement (the "<u>Franchise Agreement</u>") with Shilo Franchise International, LLC ("<u>SFI</u>") and managed and operated by Shilo Management Corporation ("<u>SMC</u>").

12.      As of the Petition Date, Lender contends that the Debtor was indebted to Lender in the amount of not less than $17,555,298.13 (the "<u>Prepetition Indebtedness</u>") on account of a loan (the "<u>Mortgage</u>") in the principal amount of $12,200,000 made by Axos Bank (the predecessor-

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

in-interest to Lender) ("Original Lender").  The Loan Parties dispute the amount of the Prepetition Indebtedness including certain charges owing to Lender thereunder.  Lender contends that the Debtor has waived its right to challenge the amount of the Prepetition Indebtedness that was owing as of the Petition Date pursuant to the *Interim Order (I) Authorizing Use of Cash Collateral and Granting Adequate Protection Liens and (II) Scheduling a Final Hearing* [Dkt. No. 45] (the "Interim Order") entered by the Bankruptcy Court on November 22, 2022.  The Debtor disputes such contention.

13.     The Parties' respective rights and obligations with respect to the Prepetition Indebtedness are set forth in various loan documents binding the Parties, including (a) the Secured Promissory Note, dated as of December 16, 2019, to the order of the Original Lender (the "Note"); (b) the Deed of Trust, Assignment of Leases and Rents and Security Agreement dated December 16, 2019, executed by Debtor, in favor of Ticor Title Company of Oregon, as trustee, for the benefit of Lender's predecessor, Axos Bank, as beneficiary (the "Deed of Trust"); (c) Guaranties of the Mortgage executed by Hemstreet (the "Hemstreet Guaranty") and PH2 (the "PH2 Guaranty", together with the Hemstreet Guaranty, the "Guaranties"); (d) an Assignment and Subordination of Management Agreement and Franchise Agreement (the "Subordination Agreement"); (e) an Estoppel Certificate; (f) an Assignment of Leases and Rents, Security Agreement and Fixture Filing; (g) an Assignment of Line of Credit Instrument Deed of Trust; (h) and Assignment of Loan Documents, and (i) other loan documents related to and evidencing the Mortgage (collectively, the "Loan Documents").

14.     On March 19, 2023, Lender filed its Proof of Claim, which was designated as Claim No. 8 (the "Lender POC").  Pursuant to the Lender POC, Lender asserts a secured claim, as of the Petition Date, in the amount of $17,555,298.13.  The Lender further contends that it is over-secured and entitled to additional interest, fees and costs from and after the Petition Date.

15.     During the pendency of the Debtor's bankruptcy case, the Debtor and Lender entered into numerous agreements and stipulations for use of cash collateral, with certain reporting

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

120032847.2 0070625-00008

Case 22-41459-BDL    Doc 126    Filed 06/26/23    Ent. 06/26/23 16:22:40    Pg. 16 of 35

requirements related thereto, the last of which was filed on January 24, 2023 [Dkt. # 97] (the "Stipulation").

16.    The Debtor and Lender continued to engage in good faith settlement discussions in order to resolve the Parties' disputes and this bankruptcy case.

17.    The Debtor and Lender have agreed to enter into a settlement (the "Settlement") as memorialized in the settlement agreement (the "Agreement" or "Settlement Agreement") attached as **Exhibit 2** to this Declaration.

18.    Based on such extensive efforts, the Parties have reached the Agreement to bring finality to the Parties' lending relationship and assure that the Loan Parties and any transferee of the Debtor does not file for bankruptcy relief for at least one (1) year after the effective date (as defined in the Agreement), that the Loan Parties and their affiliates do not challenge or interfere with Lender's foreclosure efforts following the deadlines set forth in Paragraph 6 of the Agreement, that the Loan Parties and their affiliates do not challenge Lender's entitlement to default interest or the amount of Debt stipulated to be owing as of the date of the Agreement and that Lender is granted *in rem stay* relief with respect to the Property in any subsequent bankruptcy filing for a period of two (2) years after the Effective Date.

19.    The Settlement is in the best interest of the creditors of the estate and should be approved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 26th day of June, 2023, at _Bullhead City, Arizona._

_____
LARRY CHANK

MOTION TO APPROVE SETTLEMENT

- 17 -

120032847.2 0070625-00008

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

Case 22-41459-BDL    Doc 126    Filed 06/26/23    Ent. 06/26/23 16:22:40    Pg. 17 of 35

# EXHIBIT "1"

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

In re:

SHILO INN, PORTLAND/205, LLC,

    Debtor and Debtor-in-Possession,

Case No. 22-41459-BDL

**ORDER GRANTING DEBTOR'S MOTION TO APPROVE SETTLEMENT WITH PDX SHILO LOAN OWNER LLC PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

On July 17, 2023, at 10:00 a.m. the Honorable Brian D. Lynch, United States Bankruptcy Judge for the Western District of Washington, Tacoma Division (the "Court") held a hearing (the "Hearing") in the United States Bankruptcy Courthouse located at 1717 Pacific Avenue, Tacoma, Washington 98402, to consider the *Debtor's Motion to Approve Settlement with PDX Shilo Loan Owner LLC Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* (the "Motion")

ORDER GRANTING MOTION TO APPROVE
SETTLEMENT WITH PDX SHILO LOAN OWNER
PURSUANT TO FED.R.BANKR.P. 9019   - 1
108415647.1 0070625-00001

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

Case 22-41459-BDL   Doc 126   Filed 06/26/23   Ent. 06/26/23 16:22:40   Pg. 19 of 35

1     [Dkt. No.___] filed by Shilo Inn, Portland/205 LLC (the "Debtor") the debtor and debtor possession

2     in the above-captioned chapter 11 bankruptcy case.  Appearances were made as set forth on the

3     record of the Court at the Hearing.  Initial capitalized terms not otherwise defined in this Order

4     have the same meanings as ascribed to them in the Motion and accompanying Master Statement

5     of Facts.

6          The Court, having considered the Motion, the notice of the Motion, the declaration of Larry

7     Chank in support of the Motion, the Settlement Agreement annexed hereto as Exhibit A, proper

8     notice of the hearing and the Motion having been provided, no response or objection to the Motion

9     having been filed, the record in the case, the docket in the case, and for good cause appearing,

10    therefor,

11         **HEREBY FINDS** that notice of the Hearing and Motion were good and proper under the

12    circumstances of the case; and

13         **HEREBY ORDERS AS FOLLOWS:**

14       1.       The Motion is granted as set forth in this Order on a basis;

15       2.       The Settlement Agreement is approved.

16       3.       The Debtor is authorized to enter into the Settlement Agreement and take all steps

17    necessary and proper to implement and effectuate the Settlement.

18       4.       In accordance with the Settlement Agreement, none of the Loan Parties (as defined

19    in the Settlement Agreement) may file a voluntary petition for bankruptcy relief under the

20    Bankruptcy Code for at least one (1) year after the date of entry of the Dismissal Order (as such

21    term is defined in the Settlement Agreement).

22

23       **IT IS SO ORDERED.**

24                ***[END OF ORDER]***

25

26

ORDER GRANTING MOTION TO APPROVE
SETTLEMENT WITH PDX SHILO LOAN OWNER
PURSUANT TO FED.R.BANKR.P. 9019      - 2
108415647.1 0070625-00001

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

Presented By:

LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.

*/s/ John-Patrick M. Fritz*
David B. Golubchik (pro hac vice admitted)
John-Patrick M. Fritz (pro hac vice admitted)

Attorneys for Debtor and
Debtor-in-Possession

STOEL RIVES LLP

*/s/ Bryan T. Glover*
Bryan T. Glover, WSBA No. 51045
Attorneys for Debtor and
Debtor-in-Possession

ORDER GRANTING MOTION TO APPROVE
SETTLEMENT WITH PDX SHILO LOAN OWNER
PURSUANT TO FED.R.BANKR.P. 9019 - 3
108415647.1 0070625-00001

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

Case 22-41459-BDL    Doc 126    Filed 06/26/23    Ent. 06/26/23 16:22:40    Pg. 21 of 35

# EXHIBIT "2"

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into as of June 23, 2023, by Shilo Inn, Portland/205, LLC ("Debtor"), the debtor and debtor-in-possession in that certain chapter 11 bankruptcy bearing the case number 22-41459-BDL, Mark Hemstreet ("Hemstreet") and Portland/205 Hotel (2) Corp ("PH2", together with Hemstreet and PH2, the "Loan Parties") on the one hand, and PDX Shilo Loan Owner LLC ("Lender"), on the other hand.  The Loan Parties and Lender are referred to collectively as the "Parties" and individually as a "Party". The Agreement is made with reference to the following facts:

## RECITALS

A.      On November 9, 2022 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Washington, Tacoma Division (the "Bankruptcy Court").   The Debtor continues to manage its business and property as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code;

B.      As of the Petition Date, Lender contends that the Debtor was indebted to Lender in the amount of not less than $17,555,298.13 (the "Prepetition Indebtedness") on account of a loan (the "Mortgage") in the principal amount of $12,200,000 made by Axos Bank (the predecessor-in-interest to Lender) ("Original Lender").   But for entry into this Agreement, the Loan Parties dispute the amount of the Prepetition Indebtedness including certain charges owing to Lender thereunder.  Lender contends that the Debtor has waived its right to challenge the amount of the Prepetition Indebtedness that was owing as of the Petition Date pursuant to the *Interim Order (I) Authorizing Use of Cash Collateral and Granting Adequate Protection Liens and (II) Scheduling a Final Hearing* [Dkt. No. 45] (the "Interim Order") entered by the Bankruptcy Court on November 22, 2022.  The Debtor disputes such contention.

C.      The Parties' respective rights and obligations with respect to the Prepetition Indebtedness are set forth in various loan documents binding the Parties, including (a) the Secured Promissory Note, dated as of December 16, 2019, to the order of the Original Lender (the "Note"); (b) the Deed of Trust, Assignment of Leases and Rents and Security Agreement dated December 16, 2019, executed by Debtor, in favor of Ticor Title Company of Oregon, as trustee, for the benefit of Lender's predecessor, Axos Bank, as beneficiary (the "Deed of Trust"); (c) Guaranties of the Mortgage executed by Hemstreet (the "Hemstreet Guaranty") and PH2 (the "PH2 Guaranty", together with the Hemstreet Guaranty, the "Guaranties"); (d) an Assignment and Subordination of Management Agreement and Franchise Agreement (the "Subordination Agreement"); (e) an Estoppel Certificate; (f) an Assignment of Leases and Rents, Security Agreement and Fixture Filing; (g) an Assignment of Line of Credit Instrument Deed of Trust; (h) and Assignment of Loan Documents, and (i) other loan documents related to and evidencing the Mortgage (collectively, the "Loan Documents").

D.      The Prepetition Indebtedness is secured by, among other things, (i) the Deed of Trust, recorded in the Official Records in the County Recorder's office of Multnomah County, Oregon, as Instrument 2019-141976, encumbering the real property owned by the Debtor (the

"Property") and a (ii) UCC-1 filed with the Oregon Secretary of State on December 27, 2019, bearing Lien No. 92139609, perfecting security interests in, *inter alia*, (a) all or substantially all of the real property assets of the Debtor, including the Property (the "Prepetition Real Estate Collateral"); and (b) all other property of the Debtor, including substantially all of the Debtor's personal property (the "Prepetition Personal Property Collateral" and together with the Prepetition Real Estate Collateral, the "Prepetition Collateral"). The Prepetition Collateral together with any additional collateral in which Lender has a lien in accordance with the terms of the Interim Order, the "Collateral".

E.      Due to the Debtor's failure to make its Mortgage payment on February 2020 and at all times thereafter, on April 19, 2022, Secured Creditor appointed McEwen Gisvold LLP as Successor Trustee (the "Successor Trustee"). On April 25, 2022, Successor Trustee notified the Debtor of Debtor's defaults under the Loan Documents and recorded that certain Notice of Default on April 25, 2022 in the Official Records in the County Recorder's office of Multnomah County, Oregon, as Instrument 2022-042377 (the "Notice of Default"). Also on April 25, 2022, Successor Trustee issued that certain Notice of Trustee's Sale (the "Notice of Sale") providing for sale of the Property at auction on Wednesday, September 7, 2022 (the "Foreclosure"). Lender agreed to adjourn the Foreclosure on two separate occasions as the Parties attempted to reach an amicable resolution.

F.      On March 19, 2023, Lender filed its Proof of Claim, which was designated as Claim No. 8 (the "Lender POC"). Pursuant to the Lender POC, Lender asserts a secured claim, as of the Petition Date, in the amount of $17,555,298.13. The Lender further contends that it is over-secured and entitled to additional interest, fees and costs from and after the Petition Date.

G.      During the pendency of the Debtor's bankruptcy case, the Debtor and Lender entered into numerous agreements and stipulations for use of cash collateral, with certain reporting requirements related thereto, the last of which was filed on January 24, 2023 [Dkt. # 97] (the "Stipulation").

H.      In addition, pursuant to the Bankruptcy Court's January 26, 2023 Order [Dkt. # 99] and the Stipulation, the Debtor is obligated to file its plan of reorganization by June 1, 2023 (the "Plan Filing Deadline".

I.      The Debtor and Lender agreed to extend the Plan Filing Deadline until July 3, 2023, to allow the Parties to document and obtain Court approval of this Agreement and the Dismissal Motion (as hereinafter defined).

J.      The Debtor and Lender continued to engage in good faith settlement discussions in order to resolve the Parties' disputes and this bankruptcy case. Based on such extensive efforts, the Parties have reached an agreement as set forth in this Agreement below to bring finality to the Parties' lending relationship and assure that the Loan Parties and any transferee of the Debtor does not file for bankruptcy relief for at least one (1) year after the Effective Date (as hereinafter defined), that the Loan Parties and their affiliates do not challenge or interfere with Lender's foreclosure efforts following the deadlines set forth in Paragraph 6 below, that the Loan Parties and their affiliates do not challenge Lender's entitlement to default interest or the amount of Debt stipulated to be owing as of the date of this Agreement and that Lender is granted *in rem stay* relief

with respect to the Property in any subsequent bankruptcy filing for a period of two (2) years after the Effective Date.

　　　　**NOW THEREFORE**, in consideration of the foregoing facts and the mutual covenants, conditions, promises and agreements contained herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, and after approval of the Agreement by the Court, the Parties agree as follows:

## AGREEMENT

　　　　1.　　　**Recitals.** Each of the foregoing Recitals is true and correct and is fully incorporated herein as if fully set forth herein.

　　　　2.　　　**Acknowledgments by the Loan Parties.** Each of the Loan Parties, on behalf of itself or himself and on behalf of its or his affiliates, acknowledges and agrees as follows:

　　　　　　a.　As of the close of business on June 5, 2023, (i) the total Mortgage balance is **$18,832,511.95** (the "Debt"); (ii) the principal amount of the Mortgage outstanding is $12,200,000, (ii) plus accrued interest at the Default Rate (as defined in the Note) totaling $5,991,725.00 (iii) plus late charges totaling $131,198.46; (iv) plus a Prepayment Premium (as set forth in Section 7.1 of the Note) totaling $244,000; (v) plus a special servicing fee totaling $41,000; (vi) plus the fees of counsel, financial advisor and appraiser totaling $555,786.95. Notwithstanding anything to the contrary contained herein, in pleadings filed with the Bankruptcy Court or in the Loan Documents, each of the Loan Parties agrees that the Debt is owing without offset, counterclaim or defense of payment of any type or nature whatsoever and that the Debt shall continue to accrue interest at the Default Rate from June 6, 2023 forward;

　　　　　　b.　Lender has a properly perfected and valid first priority lien and security interest in the Collateral;

　　　　　　c.　(i) Each of the Loan Documents to which it is a party has been duly executed and delivered to Original Lender by the applicable Loan Party, and each is in full force and effect as of the date hereof, (ii) the agreements and obligations of such Loan Party contained in the Loan Documents and in this Agreement constitute the legal, valid and binding obligations of the respective Loan Party, enforceable against each Loan Party in accordance with their respective terms, and the Loan Parties have no valid defense to the enforcement thereof, and (iii) Lender is and shall be entitled to the rights, remedies and benefits provided for in the Loan Documents and applicable law; and

　　　　　　d.　(i) Lender provided timely and proper notice of the Debtor's default through the Notice of Default, which was properly recorded in the Official Records in the County Recorder's office of Multnomah County, Oregon; (b) Lender provided timely and proper notice of the Foreclosure through the Notice of Sale, and the Loan Parties further waive any claims that any notices previously given are insufficient for any reason; and (c) the Debtor did not have and does not have any

defenses to the Foreclosure, except that the Foreclosure is currently stayed pursuant to section 362 of the Bankruptcy Code.

3. **Waiver of Default Rate Challenge by the Loan Parties.** Each of the Loan Parties, on behalf of himself or itself and on behalf of its or his affiliates, waives and forever surrenders such Party's right to challenge the Default Rate or Lender's entitlement to be paid at the Default Rate under the Loan Documents, and covenants not to challenge, in any forum, the Default Rate or Secured Lender's entitlement to be paid the Default Rate.

4. **Covenant not to Interfere.** Each of the Loan Parties, on behalf of himself or itself and on behalf of its or his affiliates, covenants and agrees not to assert a defense to, seek a restraint of, or interfere with Lender's enforcement of its rights and remedies hereunder or under any of the Loan Documents, in the Foreclosure, any other foreclosure or otherwise, which Foreclosure shall be re-noticed for September 1, 2023, after occurrence of the Effective Date.

5. **Section 362(d)(4) Stay Relief.** The Debtor covenants and agrees that, in any subsequent bankruptcy proceeding of the Debtor or with respect to the Property, Lender shall thereupon be entitled and the Debtor irrevocably consents to immediate and unconditional relief from any automatic stay imposed by section 362(a) of the Bankruptcy Code, or otherwise, on or against the exercise of the rights and remedies otherwise available to Lender as against the Property and the other Collateral, and the Loan Parties irrevocably waive any right to object to such relief and will not contest any motion by Lender or any successor seeking such relief. The Debtor will cooperate with Lender, in any manner requested by Lender, in its efforts to obtain relief from any such stay or other prohibition. In furtherance of the foregoing covenant, the 9019 Order (as defined below) and the Dismissal Order (as defined below) shall provide for *in rem* relief from the automatic stay pursuant to section 362(d)(4) of the Bankruptcy Code such that the automatic stay under section 362(a) of the Bankruptcy Code shall not apply to the Property or to the Other Collateral or to Lender's interest therein for a period of two (2) years after the Effective Date, and the Debtor waives its right to seek relief from such two (2)-year stay relief period based on any defense, including based upon changed circumstances or for good cause shown. For the avoidance of doubt, the automatic stay is vacated as of the Effective Date and Lender may record the 9019 Order and/or the Dismissal Order in compliance with the laws of Oregon and in furtherance of section 362(d)(4) of the Bankruptcy Code.

6. **Payment of the Discounted Payoff.** Notwithstanding the stipulated and agreed amount of the Debt set forth above, Lender agrees to accept a discounted payoff of the Debt in the amount of ▮▮▮▮▮▮▮▮ (the "DPO"), on the condition that the DPO is paid to Lender upon the following schedule:

    a. Unless extended as set forth below, the Debtor shall make full payment of the DPO in immediately available funds on or before August 28, 2023 (the "Initial Deadline");

    b. The Debtor shall have the right to extend the Initial Deadline through and including September 29, 2023 ("Second Deadline"), on the condition that (i) the Debtor pays Lender in immediately available funds, on or before August 28, 2023, an extension fee of $75,000, which payment shall not be applied as a credit against, or reduction from, the DPO and (ii) the Debtor pays its real property taxes and provides evidence

of the same to the Lender on or before August 28, 2023, in accordance with Paragraph 11 of this Agreement;

    c.   In the event that the Debtor does not pay the DPO in full on or before the Second Deadline, and solely if the Second Deadline was timely and properly exercised, the Debtor shall have the right to one final extension of the Second Deadline, through and including October 31, 2023 (the "Final Deadline"), on the condition that the Debtor pays Lender in immediately available funds, on or before September 28, 2023, an extension fee of $100,000, which payment shall not be applied as a credit against, or reduction from, the DPO.

7.    **No Extension of Final Deadline.**  After the Final Deadline, there shall be no further extensions of the time within which the Debtor must pay the DPO. If the Debtor fails to pay the DPO in accordance with Paragraph 6 of this Agreement, the Loan Parties agree not to interfere with Lender's foreclosure. For the avoidance of doubt, in any foreclosure with respect to the Collateral, Lender may credit bid up to the full amount of the Debt then outstanding, which Debt shall continue to accrue interest at the Default Rate from June 6, 2023 forward.

8.    **Initial Deadline.**  In the event that the Second Deadline extension is not timely and properly exercised and the DPO is not paid in full on or before the Initial Deadline, Lender shall conclude the Foreclosure without interference from any of the Loan Parties or any of their affiliates at a time of Lender's choosing, which may be on or after September 1, 2023.

9.    **Second Deadline.**  In the event that the Final Deadline extension is not timely and properly exercised and the DPO is not paid in full on or before the Second Deadline, Lender shall conclude the Foreclosure without interference from any of the Loan Parties or any of their affiliates at a time of Lender's choosing, which may be on or after October 2, 2023.

10.    **Final Deadline.**  In the event that Second Deadline and Final Deadline are timely and properly exercised and the DPO is not paid in full on or before the Final Deadline, Lender shall conclude the Foreclosure without interference from any of the Loan Parties or any of their affiliates at a time of Lender's choosing, which may be on or after November 1, 2023.

11.    **Payment of Property Taxes.**  Until such time as the DPO is paid in full or Lender forecloses on the Property, the Debtor shall make all outstanding property tax payments on the Property as set forth herein. In connection therewith, the Debtor shall pay $198,607.78 to bring current all outstanding property taxes and provide to Lender evidence of such payment having been made with next day funds (i.e., wire, online, cashier's check) on or before August 28, 2023.

12.    **Reporting.**  Until such time as the DPO is paid in full or Lender forecloses on the Property, the Debtor shall provide the following reporting to Lender:

    a.   Every Monday, the Debtor shall provide a Daily Report for the prior Sunday; and

    b.   The Debtor shall provide the monthly STR report within five (5) days of receipt.

13.    **Covenant Not to Initiate Bankruptcy Proceedings.**  Each of the Loan Parties covenants and agrees (a) not file a voluntary petition for bankruptcy relief under the Bankruptcy

Code for at least one (1) year after the date of entry of the Dismissal Order and, (b) by any act or omission indicate its consent to, approval of or acquiescence in any petition, application or proceeding or order for relief under the Bankruptcy Code for at least one (1) year after the Effective Date.

14. **Satisfaction Upon Payment of DPO.** Lender agrees to accept the DPO strictly in accordance with the terms of Paragraph 6 hereof in full and complete satisfaction of all amounts owing under Loan Documents, including, without limitation, the Guaranties.

15. **Satisfaction of the Debt and Guaranties Upon Foreclosure.** In the event that Lender forecloses on the Collateral, and none of the Loan Parties has theretofore breached any of its respective covenants or obligations under this Agreement, including, without limitation, timely reporting, one (1) year bar on filing for bankruptcy, timely property tax payment as provided in Paragraph 11 above, and other payments, and lack of interference by the Loan Parties and their affiliates with Lender's foreclosure efforts, any deficiency or other amounts owing under the Loan Documents, will be waived and forgiven and Lender shall be deemed to have released any right to pursue the Loan Parties with respect to the Property and all obligations and amounts owed to Lender under the Loan Documents.

16. **Potential Future Unwinding.** In the event that a final, non-appealable judgment is obtained against Lender based on a preference claim, fraudulent conveyance or fraudulent transfer claim or any other avoidance or other claim challenging or seeking to unwind this Agreement or the payments contemplated hereunder, or any Loan Party, in its discretion, elects to enter into a settlement agreement to settle any such claim prior to final judgment, then all of the transactions effectuated hereby, including Lender's release of liens and the satisfaction of the amounts owing under the Loan Documents, shall be null and void and the Parties' shall be placed back into the position they were prior to this Agreement, with all of Lender's liens attaching to the Collateral in the same priority as they existed on the Effective Date.

17. **Release of Lender.** Each Loan Party, on behalf of itself or himself and each of their successors, assigns, owners, parent entities, subsidiaries, divisions, affiliates and heirs and their respective managers, members, officers, directors, employees, and agents, in their official and individual capacities, together with their predecessors (all of the foregoing collectively, the "Releasors" and individually, a "Releasor"), does hereby fully and completely release, acquit, acknowledge as satisfied, and forever discharges Lender, its parent entities, subsidiaries, divisions and affiliates, and their respective managers, members, officers, directors, employees, and agents, including their professionals, in their official and individual capacities, together with their predecessors, successors and/or assigns, and any participants (all of the foregoing collectively, the "Releasees") from any and all claims, actions, causes of action, demands, rights, injuries of any type, damages, costs, loss of services, expenses, compensation, or any other thing whatsoever, whether known or unknown, foreseen or unforeseen, which any such Releasor now has or which may hereafter accrue to such Releasor to the extent that such claims arise out of or relate in any way to the Loan Documents or the Collateral (collectively, "Lender Released Claims"). For the avoidance of doubt, the Lender Released Claims shall not release or relieve Lender, in whole or in part, of any of its agreements, obligations or liabilities contained in this Agreement.

18.     **Section 1542 of the California Civil Code**.  Each Loan Party acknowledges that it may hereafter discover facts different from or in addition to those which it now knows or believes to be true with respect to the Lender Released Claims, and agrees that every release herein made in favor of the Releasees will remain effective notwithstanding such different or additional facts or the discovery thereof.  Each Loan Party expressly waives and relinquishes any and all rights and benefits conferred upon it by the provisions of section 1542 of the California Civil Code, which are as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

It is understood by the Loan Parties that the facts with respect to which the foregoing releases are given may hereafter turn out to be other than or different from the facts known to the Loan Parties or believed by the Loan Parties to be true, and the Loan Parties expressly assume the risk of the facts turning out to be so different and agree that the foregoing releases shall be in all respects effective and not subject to termination or rescission by any such difference in facts.

Debtor Initials:  _____          Hemstreet Initials:_____

PH2 Initials:_____

19.     **9019 Motion.**  Promptly upon execution of this Agreement by all Parties hereto, the Debtor shall file a motion with the Bankruptcy Court (the "9019 Motion") to, among other things, obtain entry of an order (the "9019 Order) approving this Agreement and all provisions set forth herein pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.  The Debtor may seek to file a redacted copy of this Agreement with the DPO amount redacted provided, however, if required, the Debtor shall file a complete unredacted Agreement with the Court under seal.

20.     **Dismissal Motion.**  At the time it files the 9019 Motion, the Debtor shall file a motion in furtherance of this Agreement (the "Dismissal Motion"), in which it shall seek and obtain an order (the "Dismissal Order") (a) dismissing this case pursuant to section 1112 of the Bankruptcy Code, effective as of July 31, 2023; (b) barring the Debtor from filing a bankruptcy petition for a one-year period following entry of the Dismissal Order; (c) granting Lender relief from the automatic stay to continue the Foreclosure; and (d) and *in rem* relief from the automatic pursuant to section 362(d)(4) of the Bankruptcy Code such that the automatic stay under section 362(a) of the Bankruptcy Code shall not apply to the Property or the other Collateral, or Lender's interest therein, for a period of two (2) years after entry of the Dismissal Order.

21.     **Conditions Precedent to the Effective Date.**  This Agreement shall be effective on the date (such date, the "Effective Date") that the Dismissal Order and 9019 Order are entered pursuant to final and non-appealable orders.

22.     **Non-Occurrence of the Effective Date**.  In the event the Effective Date does not occur on or before July 31, 2023, then:

    a.  This Agreement shall be null and void except that (a) the Loan Parties' acknowledgments and covenants in Paragraphs 2 and 3 (other than acknowledgement of interest at the Default Rate, Prepayment Premium and late fees) and (b) the Loan Parties' releases in Paragraphs 15 and 16 shall continue to bind the Loan Parties; and

    b.  The Debtor shall come current with its reporting requirements under that certain Stipulation on or before August 7, 2023, and shall continue to be bound by its reporting and other requirements under the Stipulation until payment in full pursuant to the terms hereof or foreclosure of the Collateral.

23.     **Parties' Representations.**  The Parties represent and agree that:  (a) each of the Parties has obtained and/or had the opportunity to obtain independent legal advice with respect to this Agreement, the subject matter of this Agreement, the facts referred to above, and any rights or asserted rights arising therefrom; (b) each of the Parties has full knowledge of any and all rights which he/she/it may have in connection with the matters set forth herein; (c) none of the Parties is relying upon nor has relied upon any representation or statement made by any of the Parties or its counsel, with regard to the matters herein compromised or with regard to any rights or asserted rights in connection therewith, except to the extent set forth in this Agreement; and (d) each of the Parties hereby assumes the risk of any mistakes of fact in connection with the true facts involved in this Agreement or with regard to any facts which are now unknown to it/him/her relating thereto.

24.     **Advice of Counsel.**  Each of the Parties warrants, represents and agrees that, prior to executing and delivering this Agreement, each has read this Agreement, has conferred with counsel of its choice regarding the terms and conditions set forth in this Agreement, and the legal significance of the terms and conditions contained in this Agreement, and is fully aware of the contents of this Agreement and its legal effect.

25.     **Acceptance of Risk.**  The Parties further acknowledge that this Agreement constitutes a compromise of disputed claims and each of the Parties assumes the risk of any damages, injuries, disabilities, or errors which may now be latent or unexpected and which may hereafter appear, develop or occur as a result of, or in relation to, the claims raised or the causes of action brought in the respective lawsuits.

26.     **Governing Law**.  THIS AGREEMENT AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF [OREGON] APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE, WITHOUT REGARD TO THE PRINCIPLES THEREOF REGARDING CONFLICTS OF LAWS, AND ANY APPLICABLE LAWS OF THE UNITED STATES OF AMERICA.  EACH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY AGREES THAT, PRIOR TO THE EFFECTIVE DATE, ANY DISPUTE, CLAIM OR CONTROVERSY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE BREACH, TERMINATION, ENFORCEMENT, INTERPRETATION OR VALIDITY THEREOF SHALL BE DETERMINED BY THE BANKRUPTCY COURT,

AND, AFTER THE EFFECTIVE DATE, BY A COURT OF COMPETENT JURISDICTION IN PORTLAND, OREGON.

27. **Waiver Of Jury Trial. THE LOAN PARTIES AND LENDER, TO THE FULLEST EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVE, RELINQUISH AND FOREVER FORGO THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THIS AGREEMENT.**

28. **Miscellaneous**:

   a. The provisions of this Agreement, including the provisions of this sentence, may not be amended, modified or supplemented, and waivers or consents to departures from the provisions hereof may not be given, without the written consent thereto of the Parties or Party affected thereby.

   b. This Agreement shall be binding upon, and inure to the benefit of, the Parties, and their respective successors and assigns, including any trustee or estate representative that may be appointed in the Bankruptcy Case and any successor to Lender, including a successor that acquires the Loan Documents.

   c. The Parties agree to cooperate and to execute and deliver from time to time such other documents and take such other actions as may be necessary and appropriate, without payment of further consideration by any Party, in order to effectuate the transactions contemplated by this Agreement and to comply with such Party's obligations hereunder after the Effective Date.

29. **Notice.** All notices, demands, requests, consents or other communications to be given or delivered under or by reason of the provisions of this Agreement shall be in writing and shall be deemed to have been given when (i) delivered personally to the recipient, (ii) sent by facsimile or electronic mail to the recipient (with hard copy sent to the recipient by reputable overnight courier service (charges prepaid) that same day) if sent by facsimile before 5:00 p.m. prevailing Eastern Time on a business day, and otherwise on the next business day, or (iii) one business day after being sent to the recipient by reputable overnight courier service (charges prepaid). Such notices, demands, requests, consents and other communications shall be sent to the following addresses:

   (i)   if to Lender:

   PDX Shilo Loan Owner, LLC
   c/o Serene Investments Management, LLC
   2148 Jimmy Durante Blvd., Suite B
   Del Mar, California 92014
   Attn: Adam J. Phillips
   e-mail: adam@sereneim.com

       with a copy to:

       Loeb & Loeb LLP
       10100 Santa Monica Blvd.
       Suite 2200
       Los Angeles, CA  90067
       Attn:  Lance N. Jurich, Esq.
       Facsimile: (310) 919-3897

       e-mail: ljurich@loeb.com

(ii)    if to the Loan Parties:

       Shilo Inn, Portland/205, LLC
       11707 NE Airport Way
       Portland, Oregon 97220
       Attn:  Mark S. Hemstreet
       e-mail:  mark.hemstreet@shiloinns.com

       with a copy to:
       Levene, Neale, Bender, Yoo & Golubchik L.L.P
       2818 La Cienega Avenue
       Los Angeles, California 90034
       Attn:  David Golubchik & John-Patrick Fritz
       e-mail: dbg@lnbyg.com & jpf@lnbyg.com

30.    **Execution.**  This Agreement may be executed in multiple counterpart copies, each of which shall be deemed an original, but all of which together shall constitute one agreement. The Agreement shall become effective when each party has obtained a fully executed counterpart original of this Agreement and the other counterpart copies referred to herein, and the agreement is approved by the Bankruptcy Court.

    **IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement to be effective as of the date set forth above.

DATED:  June __, 2023      **SHILO INN, PORTLAND/205, LLC**

      By: Portland/205 Hotel (2) Corp. Manager

      By: _____
          Name: Mark S. Hemstreet
          Its: Secretary

DATED:  June __, 2023            **PDX SHILO LOAN OWNER LLC**


By: Serene Investment Management, LLC,
Its Manager


By: _____
            Name: Adam J. Phillips
            Its: Manager

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing document entitled **DEBTOR'S MOTION TO APPROVE SETTLEMENT WITH PDX SHILO LOAN OWNER LLC PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF LARRY CHANK IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 26, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ *Service information continued on attached page*

**2. SERVED BY UNITED STATES MAIL**: On **June 26, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ *Service information continued on attached page*

The Honorable Judge Brian D. Lynch
United States Bankruptcy Court
1717 Pacific Avenue, Suite 2100
Tacoma, WA 98402-32333.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 26, 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

*None.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 26, 2023 | Jason Klassi | /s/ Jason Klassi |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

**22-41459-BDL Notice will be electronically mailed to:**

Timothy J. Conway on behalf of Interested Party Brian Weiss
tim.conway@tonkon.com, candace.duncan@tonkon.com

Michael M Feinberg on behalf of Creditor PDX Shilo Loan Owner, LLC
mfeinberg@karrtuttle.com, rmoreau@karrtuttle.com;asier@karrtuttle.com

Susan S Ford on behalf of Creditor Multnomah County-DART
sford@sussmanshank.com, ecf.susan.ford@sussmanshank.com;jhume@sussmanshank.com;susan-ford-1058@ecf.pacerpro.com

John-Patrick M. Fritz on behalf of Debtor Shilo Inn, Portland/205, LLC
, JPF.LNBYB@ecf.inforuptcy.com

Bryan T Glover on behalf of Debtor Shilo Inn, Portland/205, LLC
bryan.glover@stoel.com, docketclerk@stoel.com,michelle.smock@stoel.com,jeannie.lihs@stoel.com

David B. Golubchik on behalf of Debtor Shilo Inn, Portland/205, LLC
dbg@lnbyg.com

Daniel T. Hagen on behalf of Creditor PDX Shilo Loan Owner, LLC
dhagen@karrtuttle.com, sanderson@karrtuttle.com;asier@karrtuttle.com

Lance Jurich on behalf of Creditor PDX Shilo Loan Owner, LLC
ljurich@loeb.com

Bruce W. Leaverton on behalf of Interested Party Courtesy NEF
bleaverton@karrtuttle.com, rmoreau@karrtuttle.com;asier@karrtuttle.com

Ryan S Moore on behalf of US Trustee United States Trustee
ryan.moore@usdoj.gov, young-mi.petteys@usdoj.gov,cori.gustafson@usdoj.gov,yash.j.chohan@usdoj.gov

Vadim J Rubinstein on behalf of Creditor PDX Shilo Loan Owner, LLC
vrubinstein@loeb.com

United States Trustee
USTPRegion18.SE.ECF@usdoj.gov

Noah Weingarten on behalf of Creditor PDX Shilo Loan Owner, LLC
nweingarten@loeb.com, nydocket@loeb.com