**Below is the Order of the Court.**



**Brian D. Lynch**
**U.S. Bankruptcy Judge**
**(Dated as of Entered on Docket date above)**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

In re:

SHILO INN, PORTLAND/205, LLC,

　　　Debtor and Debtor-in-Possession,

Case No. 22-41459-BDL

**ORDER GRANTING DEBTOR'S MOTION TO APPROVE SETTLEMENT WITH PDX SHILO LOAN OWNER LLC PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

　　　On July 17, 2023, at 10:00 a.m. the Honorable Brian D. Lynch, United States Bankruptcy Judge for the Western District of Washington, Tacoma Division (the "Court") held a hearing (the "Hearing") in the United States Bankruptcy Courthouse located at 1717 Pacific Avenue, Tacoma, Washington 98402, to consider the *Debtor's Motion to Approve Settlement with PDX Shilo Loan Owner LLC Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* (the "Motion")

ORDER GRANTING MOTION TO APPROVE
SETTLEMENT WITH PDX SHILO LOAN OWNER
PURSUANT TO FED.R.BANKR.P. 9019
108415647.1 0070625-00001

- 1

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

Case 22-41459-BDL    Doc 150    Filed 07/18/23    Ent. 07/18/23 15:48:47    Pg. 1 of 16

[Dkt. No. 126] filed by Shilo Inn, Portland/205 LLC (the "Debtor") the debtor and debtor possession in the above-captioned chapter 11 bankruptcy case. Appearances were made as set forth on the record of the Court at the Hearing. Initial capitalized terms not otherwise defined in this Order have the same meanings as ascribed to them in the Motion and accompanying Master Statement of Facts.

The Court, having considered the Motion, the notice of the Motion, the declaration of Larry Chank in support of the Motion, the Settlement Agreement annexed hereto as Exhibit A, proper notice of the hearing and the Motion having been provided, Limited Objection filed by the United States Trustee, Objection filed by Multnomah County DART ("County") and Debtor's Response thereto, the Ex Parte Motion For Authority To File Unredacted Settlement Agreement Under Seal, the agreement reached and described on the record between the Debtor, PDX Shilo Loan Owner LLC ("Lender") and Brian Weiss, in his capacity as Receiver of the estate of Shilo Management Corporation ("SMC"), , the record in the case, the docket in the case, and for good cause appearing, therefor,

**HEREBY FINDS** that notice of the Hearing and Motion were good and proper under the circumstances of the case; and

**HEREBY ORDERS AS FOLLOWS:**

1.      The Motion is granted as set forth in this Order;

2.      The Settlement Agreement is approved;

3.      The Debtor is authorized to enter into the Settlement Agreement and take all steps necessary and proper to implement and effectuate the Settlement;

4.      In accordance with the Settlement Agreement, none of the Loan Parties (as defined in the Settlement Agreement) may file a voluntary petition for bankruptcy relief under the Bankruptcy Code for at least one (1) year after the date of entry of the Dismissal Order (as such term is defined in the Settlement Agreement);

ORDER GRANTING MOTION TO APPROVE
SETTLEMENT WITH PDX SHILO LOAN OWNER
PURSUANT TO FED.R.BANKR.P. 9019                    - 2

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

108415647.1 0070625-00001

Case 22-41459-BDL    Doc 150    Filed 07/18/23    Ent. 07/18/23 15:48:47    Pg. 2 of 16

1    5.    After dismissal of this case, commencing as of August 1, 2023, the Debtor shall

2    pay to SMC a management fee equal to 4% of monthly revenue as provided in the management

3    agreement between Debtor and SMC;

4    6.    With respect to SMC's Chapter 11 administrative expense claim, which is

5    estimated to be $56,144, promptly upon the order dismissing this case becoming final and

6    nonappealable, Debtor shall pay to SMC the sum of $40,000, with the remaining $16,144 to be

7    paid after any sale, to the extent unencumbered proceeds are available after payment of senior

8    obligations, including, without limitation, the Lender and County;

9    7.    With respect to SMC's pre-petition general unsecured claim, SMC shall be treated

10   *parri passu* with all other general unsecured creditors, which will not be paid until all senior claims

11   are paid in full, including, without limitation, Lender, County, Chapter 11 administrative claims

12   and priority unsecured claim; and

13   8.    For the avoidance of doubt, nothing set forth in the Settlement Agreement or this

14   Order is intended to, or shall, have the effect of elevating the treatment of Lender's secured claim

15   over that of the County's statutory secured claim.

16   **IT IS SO ORDERED.**

17                    ***[END OF ORDER]***

18

19

20

21

22

23

24

25

26

ORDER GRANTING MOTION TO APPROVE
SETTLEMENT WITH PDX SHILO LOAN OWNER
PURSUANT TO FED.R.BANKR.P. 9019                    - 3

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

108415647.1 0070625-00001

Case 22-41459-BDL    Doc 150    Filed 07/18/23    Ent. 07/18/23 15:48:47    Pg. 3 of 16

1     Presented By:

2

3     LEVENE, NEALE, BENDER,
    YOO & GOLUBCHIK L.L.P.

4

5     */s/ John-Patrick M. Fritz*
    David B. Golubchik (pro hac vice admitted)

6     John-Patrick M. Fritz (pro hac vice admitted)

7     Attorneys for Debtor and
    Debtor-in-Possession

8

9     STOEL RIVES LLP

10

11     */s/ Bryan T. Glover*
    Bryan T. Glover, WSBA No. 51045
    Attorneys for Debtor and

12     Debtor-in-Possession

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING MOTION TO APPROVE
SETTLEMENT WITH PDX SHILO LOAN OWNER
PURSUANT TO FED.R.BANKR.P. 9019      - 4

108415647.1 0070625-00001

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

1   <u>EXHIBIT A</u>

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING MOTION TO APPROVE
SETTLEMENT WITH PDX SHILO LOAN OWNER
PURSUANT TO FED.R.BANKR.P. 9019    - 5

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

108415647.1 0070625-00001

Case 22-41459-BDL    Doc 150    Filed 07/18/23    Ent. 07/18/23 15:48:47    Pg. 5 of 16

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into as of June 23, 2023, by Shilo Inn, Portland/205, LLC ("Debtor"), the debtor and debtor-in-possession in that certain chapter 11 bankruptcy bearing the case number 22-41459-BDL, Mark Hemstreet ("Hemstreet") and Portland/205 Hotel (2) Corp ("PH2", together with Hemstreet and PH2, the "Loan Parties") on the one hand, and PDX Shilo Loan Owner LLC ("Lender"), on the other hand. The Loan Parties and Lender are referred to collectively as the "Parties" and individually as a "Party". The Agreement is made with reference to the following facts:

## RECITALS

A. On November 9, 2022 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Washington, Tacoma Division (the "Bankruptcy Court"). The Debtor continues to manage its business and property as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code;

B. As of the Petition Date, Lender contends that the Debtor was indebted to Lender in the amount of not less than $17,555,298.13 (the "Prepetition Indebtedness") on account of a loan (the "Mortgage") in the principal amount of $12,200,000 made by Axos Bank (the predecessor-in-interest to Lender) ("Original Lender"). But for entry into this Agreement, the Loan Parties dispute the amount of the Prepetition Indebtedness including certain charges owing to Lender thereunder. Lender contends that the Debtor has waived its right to challenge the amount of the Prepetition Indebtedness that was owing as of the Petition Date pursuant to the *Interim Order (I) Authorizing Use of Cash Collateral and Granting Adequate Protection Liens and (II) Scheduling a Final Hearing* [Dkt. No. 45] (the "Interim Order") entered by the Bankruptcy Court on November 22, 2022. The Debtor disputes such contention.

C. The Parties' respective rights and obligations with respect to the Prepetition Indebtedness are set forth in various loan documents binding the Parties, including (a) the Secured Promissory Note, dated as of December 16, 2019, to the order of the Original Lender (the "Note"); (b) the Deed of Trust, Assignment of Leases and Rents and Security Agreement dated December 16, 2019, executed by Debtor, in favor of Ticor Title Company of Oregon, as trustee, for the benefit of Lender's predecessor, Axos Bank, as beneficiary (the "Deed of Trust"); (c) Guaranties of the Mortgage executed by Hemstreet (the "Hemstreet Guaranty") and PH2 (the "PH2 Guaranty", together with the Hemstreet Guaranty, the "Guaranties"); (d) an Assignment and Subordination of Management Agreement and Franchise Agreement (the "Subordination Agreement"); (e) an Estoppel Certificate; (f) an Assignment of Leases and Rents, Security Agreement and Fixture Filing; (g) an Assignment of Line of Credit Instrument Deed of Trust; (h) and Assignment of Loan Documents, and (i) other loan documents related to and evidencing the Mortgage (collectively, the "Loan Documents").

D. The Prepetition Indebtedness is secured by, among other things, (i) the Deed of Trust, recorded in the Official Records in the County Recorder's office of Multnomah County, Oregon, as Instrument 2019-141976, encumbering the real property owned by the Debtor (the

"Property") and a (ii) UCC-1 filed with the Oregon Secretary of State on December 27, 2019, bearing Lien No. 92139609, perfecting security interests in, *inter alia*, (a) all or substantially all of the real property assets of the Debtor, including the Property (the "Prepetition Real Estate Collateral"); and (b) all other property of the Debtor, including substantially all of the Debtor's personal property (the "Prepetition Personal Property Collateral" and together with the Prepetition Real Estate Collateral, the "Prepetition Collateral"). The Prepetition Collateral together with any additional collateral in which Lender has a lien in accordance with the terms of the Interim Order, the "Collateral".

E.    Due to the Debtor's failure to make its Mortgage payment on February 2020 and at all times thereafter, on April 19, 2022, Secured Creditor appointed McEwen Gisvold LLP as Successor Trustee (the "Successor Trustee"). On April 25, 2022, Successor Trustee notified the Debtor of Debtor's defaults under the Loan Documents and recorded that certain Notice of Default on April 25, 2022 in the Official Records in the County Recorder's office of Multnomah County, Oregon, as Instrument 2022-042377 (the "Notice of Default"). Also on April 25, 2022, Successor Trustee issued that certain Notice of Trustee's Sale (the "Notice of Sale") providing for sale of the Property at auction on Wednesday, September 7, 2022 (the "Foreclosure"). Lender agreed to adjourn the Foreclosure on two separate occasions as the Parties attempted to reach an amicable resolution.

F.    On March 19, 2023, Lender filed its Proof of Claim, which was designated as Claim No. 8 (the "Lender POC"). Pursuant to the Lender POC, Lender asserts a secured claim, as of the Petition Date, in the amount of $17,555,298.13. The Lender further contends that it is over-secured and entitled to additional interest, fees and costs from and after the Petition Date.

G.    During the pendency of the Debtor's bankruptcy case, the Debtor and Lender entered into numerous agreements and stipulations for use of cash collateral, with certain reporting requirements related thereto, the last of which was filed on January 24, 2023 [Dkt. # 97] (the "Stipulation").

H.    In addition, pursuant to the Bankruptcy Court's January 26, 2023 Order [Dkt. # 99] and the Stipulation, the Debtor is obligated to file its plan of reorganization by June 1, 2023 (the "Plan Filing Deadline".

I.    The Debtor and Lender agreed to extend the Plan Filing Deadline until July 3, 2023, to allow the Parties to document and obtain Court approval of this Agreement and the Dismissal Motion (as hereinafter defined).

J.    The Debtor and Lender continued to engage in good faith settlement discussions in order to resolve the Parties' disputes and this bankruptcy case. Based on such extensive efforts, the Parties have reached an agreement as set forth in this Agreement below to bring finality to the Parties' lending relationship and assure that the Loan Parties and any transferee of the Debtor does not file for bankruptcy relief for at least one (1) year after the Effective Date (as hereinafter defined), that the Loan Parties and their affiliates do not challenge or interfere with Lender's foreclosure efforts following the deadlines set forth in Paragraph 6 below, that the Loan Parties and their affiliates do not challenge Lender's entitlement to default interest or the amount of Debt stipulated to be owing as of the date of this Agreement and that Lender is granted *in rem stay* relief

with respect to the Property in any subsequent bankruptcy filing for a period of two (2) years after the Effective Date.

**NOW THEREFORE**, in consideration of the foregoing facts and the mutual covenants, conditions, promises and agreements contained herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, and after approval of the Agreement by the Court, the Parties agree as follows:

**AGREEMENT**

1.     **Recitals.** Each of the foregoing Recitals is true and correct and is fully incorporated herein as if fully set forth herein.

2.     **Acknowledgments by the Loan Parties.** Each of the Loan Parties, on behalf of itself or himself and on behalf of its or his affiliates, acknowledges and agrees as follows:

    a.   As of the close of business on June 5, 2023, (i) the total Mortgage balance is **$18,832,511.95** (the "Debt"); (ii) the principal amount of the Mortgage outstanding is $12,200,000, (ii) plus accrued interest at the Default Rate (as defined in the Note) totaling $5,991,725.00 (iii) plus late charges totaling $131,198.46; (iv) plus a Prepayment Premium (as set forth in Section 7.1 of the Note) totaling $244,000; (v) plus a special servicing fee totaling $41,000; (vi) plus the fees of counsel, financial advisor and appraiser totaling $555,786.95. Notwithstanding anything to the contrary contained herein, in pleadings filed with the Bankruptcy Court or in the Loan Documents, each of the Loan Parties agrees that the Debt is owing without offset, counterclaim or defense of payment of any type or nature whatsoever and that the Debt shall continue to accrue interest at the Default Rate from June 6, 2023 forward;

    b.   Lender has a properly perfected and valid first priority lien and security interest in the Collateral;

    c.   (i) Each of the Loan Documents to which it is a party has been duly executed and delivered to Original Lender by the applicable Loan Party, and each is in full force and effect as of the date hereof, (ii) the agreements and obligations of such Loan Party contained in the Loan Documents and in this Agreement constitute the legal, valid and binding obligations of the respective Loan Party, enforceable against each Loan Party in accordance with their respective terms, and the Loan Parties have no valid defense to the enforcement thereof, and (iii) Lender is and shall be entitled to the rights, remedies and benefits provided for in the Loan Documents and applicable law; and

    d.   (i) Lender provided timely and proper notice of the Debtor's default through the Notice of Default, which was properly recorded in the Official Records in the County Recorder's office of Multnomah County, Oregon; (b) Lender provided timely and proper notice of the Foreclosure through the Notice of Sale, and the Loan Parties further waive any claims that any notices previously given are insufficient for any reason; and (c) the Debtor did not have and does not have any

defenses to the Foreclosure, except that the Foreclosure is currently stayed pursuant to section 362 of the Bankruptcy Code.

3. **Waiver of Default Rate Challenge by the Loan Parties.** Each of the Loan Parties, on behalf of himself or itself and on behalf of its or his affiliates, waives and forever surrenders such Party's right to challenge the Default Rate or Lender's entitlement to be paid at the Default Rate under the Loan Documents, and covenants not to challenge, in any forum, the Default Rate or Secured Lender's entitlement to be paid the Default Rate.

4. **Covenant not to Interfere.** Each of the Loan Parties, on behalf of himself or itself and on behalf of its or his affiliates, covenants and agrees not to assert a defense to, seek a restraint of, or interfere with Lender's enforcement of its rights and remedies hereunder or under any of the Loan Documents, in the Foreclosure, any other foreclosure or otherwise, which Foreclosure shall be re-noticed for September 1, 2023, after occurrence of the Effective Date.

5. **Section 362(d)(4) Stay Relief.** The Debtor covenants and agrees that, in any subsequent bankruptcy proceeding of the Debtor or with respect to the Property, Lender shall thereupon be entitled and the Debtor irrevocably consents to immediate and unconditional relief from any automatic stay imposed by section 362(a) of the Bankruptcy Code, or otherwise, on or against the exercise of the rights and remedies otherwise available to Lender as against the Property and the other Collateral, and the Loan Parties irrevocably waive any right to object to such relief and will not contest any motion by Lender or any successor seeking such relief. The Debtor will cooperate with Lender, in any manner requested by Lender, in its efforts to obtain relief from any such stay or other prohibition. In furtherance of the foregoing covenant, the 9019 Order (as defined below) and the Dismissal Order (as defined below) shall provide for *in rem* relief from the automatic stay pursuant to section 362(d)(4) of the Bankruptcy Code such that the automatic stay under section 362(a) of the Bankruptcy Code shall not apply to the Property or to the Other Collateral or to Lender's interest therein for a period of two (2) years after the Effective Date, and the Debtor waives its right to seek relief from such two (2)-year stay relief period based on any defense, including based upon changed circumstances or for good cause shown. For the avoidance of doubt, the automatic stay is vacated as of the Effective Date and Lender may record the 9019 Order and/or the Dismissal Order in compliance with the laws of Oregon and in furtherance of section 362(d)(4) of the Bankruptcy Code.

6. **Payment of the Discounted Payoff.** Notwithstanding the stipulated and agreed amount of the Debt set forth above, Lender agrees to accept a discounted payoff of the Debt in the amount of $███████ (the "DPO"), on the condition that the DPO is paid to Lender upon the following schedule:

    a. Unless extended as set forth below, the Debtor shall make full payment of the DPO in immediately available funds on or before August 28, 2023 (the "Initial Deadline");

    b. The Debtor shall have the right to extend the Initial Deadline through and including September 29, 2023 ("Second Deadline"), on the condition that (i) the Debtor pays Lender in immediately available funds, on or before August 28, 2023, an extension fee of $75,000, which payment shall not be applied as a credit against, or reduction from, the DPO and (ii) the Debtor pays its real property taxes and provides evidence

of the same to the Lender on or before August 28, 2023, in accordance with Paragraph 11 of this Agreement;

    c. In the event that the Debtor does not pay the DPO in full on or before the Second Deadline, and solely if the Second Deadline was timely and properly exercised, the Debtor shall have the right to one final extension of the Second Deadline, through and including October 31, 2023 (the "Final Deadline"), on the condition that the Debtor pays Lender in immediately available funds, on or before September 28, 2023, an extension fee of $100,000, which payment shall not be applied as a credit against, or reduction from, the DPO.

7.    **No Extension of Final Deadline.** After the Final Deadline, there shall be no further extensions of the time within which the Debtor must pay the DPO. If the Debtor fails to pay the DPO in accordance with Paragraph 6 of this Agreement, the Loan Parties agree not to interfere with Lender's foreclosure. For the avoidance of doubt, in any foreclosure with respect to the Collateral, Lender may credit bid up to the full amount of the Debt then outstanding, which Debt shall continue to accrue interest at the Default Rate from June 6, 2023 forward.

8.    **Initial Deadline.** In the event that the Second Deadline extension is not timely and properly exercised and the DPO is not paid in full on or before the Initial Deadline, Lender shall conclude the Foreclosure without interference from any of the Loan Parties or any of their affiliates at a time of Lender's choosing, which may be on or after September 1, 2023.

9.    **Second Deadline.** In the event that the Final Deadline extension is not timely and properly exercised and the DPO is not paid in full on or before the Second Deadline, Lender shall conclude the Foreclosure without interference from any of the Loan Parties or any of their affiliates at a time of Lender's choosing, which may be on or after October 2, 2023.

10.    **Final Deadline.** In the event that Second Deadline and Final Deadline are timely and properly exercised and the DPO is not paid in full on or before the Final Deadline, Lender shall conclude the Foreclosure without interference from any of the Loan Parties or any of their affiliates at a time of Lender's choosing, which may be on or after November 1, 2023.

11.    **Payment of Property Taxes.** Until such time as the DPO is paid in full or Lender forecloses on the Property, the Debtor shall make all outstanding property tax payments on the Property as set forth herein. In connection therewith, the Debtor shall pay $198,607.78 to bring current all outstanding property taxes and provide to Lender evidence of such payment having been made with next day funds (i.e., wire, online, cashier's check) on or before August 28, 2023.

12.    **Reporting.** Until such time as the DPO is paid in full or Lender forecloses on the Property, the Debtor shall provide the following reporting to Lender:

    a. Every Monday, the Debtor shall provide a Daily Report for the prior Sunday; and

    b. The Debtor shall provide the monthly STR report within five (5) days of receipt.

13.    **Covenant Not to Initiate Bankruptcy Proceedings.** Each of the Loan Parties covenants and agrees (a) not file a voluntary petition for bankruptcy relief under the Bankruptcy

Code for at least one (1) year after the date of entry of the Dismissal Order and, (b) by any act or omission indicate its consent to, approval of or acquiescence in any petition, application or proceeding or order for relief under the Bankruptcy Code for at least one (1) year after the Effective Date.

14.     **Satisfaction Upon Payment of DPO.**  Lender agrees to accept the DPO strictly in accordance with the terms of Paragraph 6 hereof in full and complete satisfaction of all amounts owing under Loan Documents, including, without limitation, the Guaranties.

15.     **Satisfaction of the Debt and Guaranties Upon Foreclosure.**  In the event that Lender forecloses on the Collateral, and none of the Loan Parties has theretofore breached any of its respective covenants or obligations under this Agreement, including, without limitation, timely reporting, one (1) year bar on filing for bankruptcy, timely property tax payment as provided in Paragraph 11 above, and other payments, and lack of interference by the Loan Parties and their affiliates with Lender's foreclosure efforts, any deficiency or other amounts owing under the Loan Documents, will be waived and forgiven and Lender shall be deemed to have released any right to pursue the Loan Parties with respect to the Property and all obligations and amounts owed to Lender under the Loan Documents.

16.     **Potential Future Unwinding.**  In the event that a final, non-appealable judgment is obtained against Lender based on a preference claim, fraudulent conveyance or fraudulent transfer claim or any other avoidance or other claim challenging or seeking to unwind this Agreement or the payments contemplated hereunder, or any Loan Party, in its discretion, elects to enter into a settlement agreement to settle any such claim prior to final judgment, then all of the transactions effectuated hereby, including Lender's release of liens and the satisfaction of the amounts owing under the Loan Documents, shall be null and void and the Parties' shall be placed back into the position they were prior to this Agreement, with all of Lender's liens attaching to the Collateral in the same priority as they existed on the Effective Date.

17.     **Release of Lender.**  Each Loan Party, on behalf of itself or himself and each of their successors, assigns, owners, parent entities, subsidiaries, divisions, affiliates and heirs and their respective managers, members, officers, directors, employees, and agents, in their official and individual capacities, together with their predecessors (all of the foregoing collectively, the "Releasors" and individually, a "Releasor"), does hereby fully and completely release, acquit, acknowledge as satisfied, and forever discharges Lender, its parent entities, subsidiaries, divisions and affiliates, and their respective managers, members, officers, directors, employees, and agents, including their professionals, in their official and individual capacities, together with their predecessors, successors and/or assigns, and any participants (all of the foregoing collectively, the "Releasees") from any and all claims, actions, causes of action, demands, rights, injuries of any type, damages, costs, loss of services, expenses, compensation, or any other thing whatsoever, whether known or unknown, foreseen or unforeseen, which any such Releasor now has or which may hereafter accrue to such Releasor to the extent that such claims arise out of or relate in any way to the Loan Documents or the Collateral (collectively, "Lender Released Claims").  For the avoidance of doubt, the Lender Released Claims shall not release or relieve Lender, in whole or in part, of any of its agreements, obligations or liabilities contained in this Agreement.

18.     **Section 1542 of the California Civil Code.** Each Loan Party acknowledges that it may hereafter discover facts different from or in addition to those which it now knows or believes to be true with respect to the Lender Released Claims, and agrees that every release herein made in favor of the Releasees will remain effective notwithstanding such different or additional facts or the discovery thereof. Each Loan Party expressly waives and relinquishes any and all rights and benefits conferred upon it by the provisions of section 1542 of the California Civil Code, which are as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> THAT THE CREDITOR OR RELEASING PARTY DOES NOT
> KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
> THE TIME OF EXECUTING THE RELEASE, AND THAT IF
> KNOWN BY HIM OR HER MUST HAVE MATERIALLY
> AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
> OR RELEASED PARTY.

It is understood by the Loan Parties that the facts with respect to which the foregoing releases are given may hereafter turn out to be other than or different from the facts known to the Loan Parties or believed by the Loan Parties to be true, and the Loan Parties expressly assume the risk of the facts turning out to be so different and agree that the foregoing releases shall be in all respects effective and not subject to termination or rescission by any such difference in facts.

Debtor Initials:   *MH*          Hemstreet Initials:   *MH*

PH2 Initials:   *MH*

19.     **9019 Motion.** Promptly upon execution of this Agreement by all Parties hereto, the Debtor shall file a motion with the Bankruptcy Court (the "9019 Motion") to, among other things, obtain entry of an order (the "9019 Order) approving this Agreement and all provisions set forth herein pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. The Debtor may seek to file a redacted copy of this Agreement with the DPO amount redacted provided, however, if required, the Debtor shall file a complete unredacted Agreement with the Court under seal.

20.     **Dismissal Motion.** At the time it files the 9019 Motion, the Debtor shall file a motion in furtherance of this Agreement (the "Dismissal Motion"), in which it shall seek and obtain an order (the "Dismissal Order") (a) dismissing this case pursuant to section 1112 of the Bankruptcy Code, effective as of July 31, 2023; (b) barring the Debtor from filing a bankruptcy petition for a one-year period following entry of the Dismissal Order; (c) granting Lender relief from the automatic stay to continue the Foreclosure; and (d) and *in rem* relief from the automatic pursuant to section 362(d)(4) of the Bankruptcy Code such that the automatic stay under section 362(a) of the Bankruptcy Code shall not apply to the Property or the other Collateral, or Lender's interest therein, for a period of two (2) years after entry of the Dismissal Order.

21.     **Conditions Precedent to the Effective Date.** This Agreement shall be effective on the date (such date, the "Effective Date") that the Dismissal Order and 9019 Order are entered pursuant to final and non-appealable orders.

22. **Non-Occurrence of the Effective Date**. In the event the Effective Date does not occur on or before July 31, 2023, then:

    a. This Agreement shall be null and void except that (a) the Loan Parties' acknowledgments and covenants in Paragraphs 2 and 3 (other than acknowledgement of interest at the Default Rate, Prepayment Premium and late fees) and (b) the Loan Parties' releases in Paragraphs 15 and 16 shall continue to bind the Loan Parties; and

    b. The Debtor shall come current with its reporting requirements under that certain Stipulation on or before August 7, 2023, and shall continue to be bound by its reporting and other requirements under the Stipulation until payment in full pursuant to the terms hereof or foreclosure of the Collateral.

23. **Parties' Representations.** The Parties represent and agree that: (a) each of the Parties has obtained and/or had the opportunity to obtain independent legal advice with respect to this Agreement, the subject matter of this Agreement, the facts referred to above, and any rights or asserted rights arising therefrom; (b) each of the Parties has full knowledge of any and all rights which he/she/it may have in connection with the matters set forth herein; (c) none of the Parties is relying upon nor has relied upon any representation or statement made by any of the Parties or its counsel, with regard to the matters herein compromised or with regard to any rights or asserted rights in connection therewith, except to the extent set forth in this Agreement; and (d) each of the Parties hereby assumes the risk of any mistakes of fact in connection with the true facts involved in this Agreement or with regard to any facts which are now unknown to it/him/her relating thereto.

24. **Advice of Counsel.** Each of the Parties warrants, represents and agrees that, prior to executing and delivering this Agreement, each has read this Agreement, has conferred with counsel of its choice regarding the terms and conditions set forth in this Agreement, and the legal significance of the terms and conditions contained in this Agreement, and is fully aware of the contents of this Agreement and its legal effect.

25. **Acceptance of Risk.** The Parties further acknowledge that this Agreement constitutes a compromise of disputed claims and each of the Parties assumes the risk of any damages, injuries, disabilities, or errors which may now be latent or unexpected and which may hereafter appear, develop or occur as a result of, or in relation to, the claims raised or the causes of action brought in the respective lawsuits.

26. **Governing Law.** THIS AGREEMENT AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF [OREGON] APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE, WITHOUT REGARD TO THE PRINCIPLES THEREOF REGARDING CONFLICTS OF LAWS, AND ANY APPLICABLE LAWS OF THE UNITED STATES OF AMERICA. EACH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY AGREES THAT, PRIOR TO THE EFFECTIVE DATE, ANY DISPUTE, CLAIM OR CONTROVERSY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE BREACH, TERMINATION, ENFORCEMENT, INTERPRETATION OR VALIDITY THEREOF SHALL BE DETERMINED BY THE BANKRUPTCY COURT,

AND, AFTER THE EFFECTIVE DATE, BY A COURT OF COMPETENT JURISDICTION IN PORTLAND, OREGON.

27. **Waiver Of Jury Trial. THE LOAN PARTIES AND LENDER, TO THE FULLEST EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVE, RELINQUISH AND FOREVER FORGO THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THIS AGREEMENT.**

28. **Miscellaneous:**

   a. The provisions of this Agreement, including the provisions of this sentence, may not be amended, modified or supplemented, and waivers or consents to departures from the provisions hereof may not be given, without the written consent thereto of the Parties or Party affected thereby.

   b. This Agreement shall be binding upon, and inure to the benefit of, the Parties, and their respective successors and assigns, including any trustee or estate representative that may be appointed in the Bankruptcy Case and any successor to Lender, including a successor that acquires the Loan Documents.

   c. The Parties agree to cooperate and to execute and deliver from time to time such other documents and take such other actions as may be necessary and appropriate, without payment of further consideration by any Party, in order to effectuate the transactions contemplated by this Agreement and to comply with such Party's obligations hereunder after the Effective Date.

29. **Notice.** All notices, demands, requests, consents or other communications to be given or delivered under or by reason of the provisions of this Agreement shall be in writing and shall be deemed to have been given when (i) delivered personally to the recipient, (ii) sent by facsimile or electronic mail to the recipient (with hard copy sent to the recipient by reputable overnight courier service (charges prepaid) that same day) if sent by facsimile before 5:00 p.m. prevailing Eastern Time on a business day, and otherwise on the next business day, or (iii) one business day after being sent to the recipient by reputable overnight courier service (charges prepaid). Such notices, demands, requests, consents and other communications shall be sent to the following addresses:

   (i)  if to Lender:

   PDX Shilo Loan Owner, LLC
   c/o Serene Investments Management, LLC
   2148 Jimmy Durante Blvd., Suite B
   Del Mar, California 92014
   Attn: Adam J. Phillips
   e-mail: adam@sereneim.com

with a copy to:

Loeb & Loeb LLP
10100 Santa Monica Blvd.
Suite 2200
Los Angeles, CA 90067
Attn: Lance N. Jurich, Esq.
Facsimile: (310) 919-3897

e-mail: ljurich@loeb.com

(ii)     if to the Loan Parties:

Shilo Inn, Portland/205, LLC
11707 NE Airport Way
Portland, Oregon 97220
Attn: Mark S. Hemstreet
e-mail: mark.hemstreet@shiloinns.com

with a copy to:
Levene, Neale, Bender, Yoo & Golubchik L.L.P
2818 La Cienega Avenue
Los Angeles, California 90034
Attn: David Golubchik & John-Patrick Fritz
e-mail: dbg@lnbyg.com & jpf@lnbyg.com

30.     **Execution.** This Agreement may be executed in multiple counterpart copies, each of which shall be deemed an original, but all of which together shall constitute one agreement. The Agreement shall become effective when each party has obtained a fully executed counterpart original of this Agreement and the other counterpart copies referred to herein, and the agreement is approved by the Bankruptcy Court.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement to be effective as of the date set forth above.

DATED: June __, 2023          **SHILO INN, PORTLAND/205, LLC**

By: Portland/205 Hotel (2) Corp. Manager

By: _____
        Name: Mark S. Hemstreet
        Its: Secretary

24095777 8

233739-10021

10

DATED: June __, 2023

**PDX SHILO LOAN OWNER LLC**

By: Serene Investment Management, LLC,
Its Manager

By: _____
      Name: Adam J. Phillips
      Its: Manager

24095777.8

233739-10021

11